**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Joseph SCHMIDT, Appellant**

**No. 1579 MDA 2016**

Superior Court of Pennsylvania.

Submitted February 27, 2017

Filed June 14, 2017

Joseph Schmidt, appellant, pro se.

John H. Scanlon, IV, Assistant District Attorney, and Lisa A. Swift, Assistant District Attorney, Scranton, for Commonwealth, appellee.

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and STEVENS, P.J.E.*

OPINION BY BENDER, P.J.E.:

Appellant, Joseph Schmidt, appeals from the judgment of sentence of 2 to 4 years' incarceration, imposed after the trial court revoked his sentence of intermediate punishment stemming from his convictions of driving under the influence of alcohol (DUI), and fleeing or attempting to elude a police officer. On appeal, Appellant seeks to raise one issue challenging the discretionary aspects of his sentence. Additionally, his counsel, Douglas Vanston, Esq., seeks to withdraw his representation of Appellant pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18

* Former Justice specially assigned to the Superior Court.

L.Ed.2d 493 (1967), and *Commonwealth v. Santiago*, 602 Pa. 159, 978 A.2d 349 (2009). After careful review, we affirm Appellant's judgment of sentence and grant counsel's petition to withdraw.

The trial court summarized the facts and procedural history of Appellant's case as follows: ·

Under Docket Number CP–35–CR–0002654–2011, [Appellant] was charged with Possession of a Controlled Substance in violation of 35 P.S. 780–113(a)(16), Driving Under the Influence of Alcohol or Controlled Substance [ (DUI) ] in violation of 75 Pa.C.S.A. [§ ] 3802(c), and Fleeing or Attempting to Elude Officer in violation of 75 Pa.C.S.A. [§ ] 3733(a). These charge[s] stemmed from a June 25, 2011, incident in which an Officer of the Scranton Police Department observed [Appellant] interact with two other males in a convenient [sic] store and parking lot. [Appellant's] vehicle was a maroon truck bearing PA Registration YSJ0599. The Officer pulled his patrol vehicle behind [Appellant's] truck and when [Appellant] noticed, he drove away. As the Officer followed, [Appellant's] driving became erratic and he failed to fully stop at intersections. The Officer activated his emergency lights and siren to conduct a traffic stop, yet [Appellant] continued driving erratically. [Appellant] stopped but the Officer observed him making furtive movements inside the cab of the truck. The Officer detected a strong odor of alcohol coming from the vehicle and observed [Appellant's] glossy eyes and slow, slurred speech. The Officer also observed an open beer can next to the driver seat. [Appellant] consented to a search of his vehicle and person. The Officer's search of [Appellant's] vehicle yielded over ten (10) open cans of beer, a pill identified as Dextro Amphetamine/Amphetamine 7.5[ m]g, a Schedule II

controlled substance, and the corner of a "twist" containing white powder resid[ue] which the officer knew is the type of item commonly used to package narcotics. The Officer was additionally informed by the Fire Inspector who assisted him at the scene that he found a top half of a twist bag at the intersection near where [Appellant] ultimately stopped.

On January 20, 2012, [Appellant] entered a guilty plea to ... [DUI] ... in violation of 75 Pa[.]C.S.A. [§ ] 3802(c) and ... Fleeing or Attempting to Elude Officer in violation of 75 Pa[.]C.S.A. [§ ] 3733(a).

On April 17, 2012, this [c]ourt sentenced [Appellant] [for] ... DUI to a six (6) month Intermediate Punishment Sentence with the first three (3) days on SCRAM House Arrest[ ], followed by twenty seven (27) days SCRAM Alcohol Monitoring plus five (5) months' probation and [for] ... Fleeing or Attempting to Elude Officer to two (2) years' probation, consecutive.

On November 21, 2012, this [c]ourt revoked [Appellant's] April 17, 2012, sentence after [Appellant] stipulated to a probation violation after [he] entered a guilty plea to a charge of Indirect Criminal Contempt for repeatedly violating a Protection from Abuse Order issued by the Honorable Margaret Bisignani Moyle. This [c]ourt resentenced [Appellant] to two (2) years['] Intermediate Punishment with the first ninety (90) days on SCRAM House Arrest followed by ninety (90) days on alcohol monitoring and ordered the [Appellant] to participate in the Lackawanna County DUI Court Program.

On January 15, 2014, this [c]ourt again revoked and resentenced [Appellant] ... [for his Fleeing or Attempting

to Elude a Police Officer conviction] to a two (2) year Intermediate Punishment Sentence with the first ninety (90) days [on] House Arrest, attend D[UI] Court, and no contact with Joan Chorsencki for the first six (6) months with no further Penalty [for his DUI conviction]. This occurred after [Appellant] stipulated at his [revocation of probation] hearing to violating the terms of his supervision by being arrested for Public Drunkenness in a Walmart parking lot and living at an unregistered address with Joan Chorsencki, a woman with a criminal history who had been under supervision of the Pennsylvania Board of Probation and Parole.

On October 8, 2014, this [c]ourt once again revoked and resentenced [Appellant] .... [for his Fleeing or Attempting to Elude a Police Officer conviction] to a two (2) year Intermediate Punishment Sentence with the first ninety (90) days on SCRAM House Arrest, attend DUI Court, and no contact with Joan Chorsencki for the first six (6) months[,] with no further Penalty ... [for his DUI offense]. This occurred after [Appellant] stipulated [at the revocation hearing] to violating the terms of his supervision ... after the police were called to his residence regarding a domestic dispute between [Appellant] and Joan Chorsencki, despite this [c]ourt['s] repeatedly ordering [Appellant] to stay away from Ms. Chorsencki from the Bench throughout DUI Court appearances.

On April 8, 2015, following [Appellant's] fourth violation, this [c]ourt once again revoked and resentenced [him for his Fleeing or Attempting to Elude a Police Officer offense] two (2) year[s'] Intermediate Punishment ... with the first three (3) months in Lackawanna County Prison on Work Release, followed by three (3) months on SCRAM House Arrest. This occurred after [Ap-

pellant] stipulated [at his revocation hearing] to violating the terms of his supervision ... [when] he was arrested by Scranton Police regarding another domestic dispute between [him] and Joan Chorsencki.

. On August 17, 2016, this [c]ourt again revoked [Appellant's] [Intermediate Punishment] sentence [for his conviction of Fleeing or Eluding a Police Officer] and resentenced [him] to two (2) to four (4) years' incarceration in a State Correctional Institution. [Appellant] stipulated to violating the terms of his supervision [by being] ... arrested at Joan Chorsencki's residence after engaging in a physical altercation with her brother, Joseph, while [Appellant] was under the influence of alcohol.

On August 17, 2016, [Appellant] filed a Motion for Reconsideration of Sentence in which he cited his relapse and struggle with alcohol abuse and requested that this [c]ourt reconsider another [Intermediate Punishment] sentence or a program including Work Release. This [c]ourt denied [Appellant's] Motion for Reconsideration on August 31, 2016.

[Appellant] filed a Notice of Appeal to the Pennsylvania Superior Court on September 16, 2016.

Trial Court Opinion (TCO), 11/29/16, at 1–4 (citations to the record omitted).

On September 30, 2016, the trial court issued an order directing Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely complied, filing a Rule 1925(b) statement that presented the following, single issue: "Whether the sentence[ ] imposed [was] harsh and unreasonable and an abuse of discretion?" Rule 1925(b) Statement, 10/4/16, at 1.

On January 4, 2017, Attorney Vanston filed with this Court a petition to

withdraw from representing Appellant. He has also filed an *Anders* brief, asserting that Appellant's sentencing issue is frivolous, and that there are no other, non-frivolous issues Appellant could raise on appeal.

> This Court must first pass upon counsel's petition to withdraw before reviewing the merits of the underlying issues presented by [the appellant]. *Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*).
>
> Prior to withdrawing as counsel on a direct appeal under *Anders*, counsel must file a brief that meets the requirements established by our Supreme Court in *Santiago*. The brief must:
>
> > (1) provide a summary of the procedural history and facts, with citations to the record;
> >
> > (2) refer to anything in the record that counsel believes arguably supports the appeal;
> >
> > (3) set forth counsel's conclusion that the appeal is frivolous; and
> >
> > (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.
>
> *Santiago*, 978 A.2d at 361. Counsel also must provide a copy of the *Anders* brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the *Anders* brief." *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007).

*Commonwealth v. Orellana*, 86 A.3d 877, 879–880 (Pa. Super. 2014). After determining that counsel has satisfied these technical requirements of *Anders* and *Santiago*, this Court must then "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citations and footnote omitted).

▬ In this case, Attorney Vanston's *Anders* brief complies with the above-stated requirements. Namely, he includes a summary of the relevant factual and procedural history, he refers to portions of the record that could arguably support Appellant's sentencing claim, and he sets forth his conclusion that Appellant's appeal is frivolous. He also explains his reasons for reaching that determination, and supports his rationale with citations to the record and pertinent legal authority. Attorney Vanston also attaches to his *Anders* brief a letter directed to Appellant in which he states that he has enclosed a copy of his *Anders* brief, and he also informs Appellant of the rights enumerated in *Nischan*. Accordingly, counsel has complied with the technical requirements for withdrawal. We will now independently review the record to determine if Appellant's sentencing issue is frivolous, and to ascertain if there are any other, non-frivolous issues that Appellant could pursue on appeal.

▬ We begin by addressing the trial court's conclusion that Appellant has waived his claim that his "sentence was harsh and excessive" by not "preserv[ing] that issue in his [p]ost-[s]entence [m]otion." TCO at 4. In that motion, Appellant averred that he "is struggling with an alcohol abuse problem[,]" and he asked the court to give him "one last opportunity to maintain his sobriety" by imposing another "intermediate punishment sentence or a program including Work Release in the

alternative." Post–Sentence Motion, 8/17/16, at 1–2. Appellant at no point stated that his sentence is harsh and excessive and, even if we liberally construed his post-sentence motion as encompassing a general excessiveness claim, he clearly did not assert the more specific contentions that he now seeks to raise on appeal. Attorney Vanston summarizes those arguments, as follows:

> Appellant contends that given the nature of the violation, the sentence was harsh and excessive. He argues that the lower court imposed a more severe sentence not due to any egregious facts surrounding the commission of the crime or the particular need to protect the community, but rather imposed its sentence as a punishment for his addiction problems. Although the lower court has the same sentencing alternatives as when it imposed its initial sentence, Appellant argues that the additional time given on the resentencing served as punishment for his alcoholism. Appellant suffers from addiction issues. He contends that the resentence was not warranted by the facts surrounding the commission of the crime or the necessity to protect the public. He submits that the August 17, 2016 resentence was unduly harsh and excessive since the criminal charge too [sic] which he pled [guilty] was only a summary offense.

*Anders* Brief at 12.

Because Appellant's specific sentencing claims were not set forth in, or fairly suggested by, his post-sentence motion, we agree with the trial court that they are waived. *See Commonwealth v. Bromley,* 862 A.2d 598, 603 (Pa. Super. 2004) ("It is well settled that an [a]ppellant's challenge to the discretionary aspects of his sentence is waived if the [a]ppellant has not filed a post-sentence motion challenging the discretionary aspects with the sentencing court.") (citation omitted).

■■■ In any event, we would conclude that Appellant's arguments are frivolous, even if they had been properly preserved.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars,* 895 A.2d 1270, 1275 (Pa. Super. 2006) (citation omitted).

■■■ Here, nothing in the record indicates that the trial court abused its discretion in sentencing Appellant to 2 to 4 years' incarceration after revoking his term of intermediate punishment for his fleeing and eluding offense.[1] Appellant was before the court for his *fifth* violation of the probation and/or intermediate punishment sentences imposed for his two underlying convictions in this case (DUI and fleeing or eluding a police officer). Additionally, the court offered the following reasons for imposing Appellant's sentence:

---

1. We note that,
   > [a]n intermediate punishment sentence imposed pursuant to 42 Pa.C.S. § 9763, Sentence of Intermediate Punishment, may be revoked where the specific conditions of the sentence have been violated. Upon revocation, the sentencing alternatives available to the court shall be the same as the alternatives available at the time of initial sentencing. 42 Pa.C.S. § 9773 . . . .

   *Commonwealth v. Philipp,* 709 A.2d 920, 921 (Pa. Super. 1998).

[Appellant] stipulated to the violation. The [c]ourt considered that [Appellant] has made efforts toward sobriety throughout his supervision and that this violation was relapse related. However, this [c]ourt also considered that it had giv[en] [Appellant] many opportunities and chances, yet [Appellant] did ... not successfully complete[ ] his sentence. Moreover, despite this [c]ourt['s] continually requiring that [Appellant] stay away from Ms. Chorsencki, [Appellant] was still in contact with her through visits at the Lackawanna County Prison. Furthermore, this [c]ourt had ample opportunity to observe [Appellant] throughout the DUI Treatment Court requirement, which this [c]ourt supervises.

As such, this [c]ourt was aware of the specific facts of [Appellant's] character and history. [Appellant's] misconduct and violation while under supervision are sufficient reasons for the sentence imposed. Additionally, the sentence imposed does not exceed the statutory maximum.[2] This [c]ourt considered [Appellant's] desire to make positive changes in his life. However, this [c]ourt also considered [Appellant's] failure to take advantage of the rehabilitative opportunities afforded to him by the original sentence and [Appellant's] disregard for the [c]ourt's specific orders.

This [c]ourt did not impose an excessive and harsh sentence in [Appellant's] case. The sentence was appropriate under the facts and circumstances of the case and in light of the guidelines. This [c]ourt considered the punitive, deterrent, and rehabilitative purposes of sentence, as well as the impact of the crime on the community.

Therefore, based upon the foregoing reasons, the sentence imposed by the [c]ourt was neither excessive nor harsh, and no abuse of discretion occurred.

TCO at 9–10 (citations to the record omitted).

The trial court's rationale for fashioning Appellant's sentence convinces us that the court did not abuse its discretion. Contrary to Appellant's argument, nothing in the court's discussion, or in the record, suggests that the court imposed his sentence "as punishment for his alcoholism[,]" or that his sentence is harsh because the revocation of his intermediate punishment sentence was based on his committing "only a summary offense" of harassment. Appellant's Brief at 12. It is clear that the court imposed a sentence of 2 to 4 years' incarceration because Appellant has squandered the multiple, rehabilitative opportunities provided to him in the past, he has continued to abuse alcohol and commit crimes when not incarcerated, and he seemingly has no intention of adhering to the court's order to cease contact with Ms. Chorsencki. *See* N.T., 8/17/16, at 4 (Appellant's admitting that Ms. Chorsencki has "been coming over to the jail to visit" him after he was arrested on the charges underlying the present revocation of his intermediate punishment sentence).

In light of this record, we would conclude that Appellant's sentencing claims are frivolous, even if he had preserved them for our review. Additionally, our review of the record reveals no other, nonfrivolous issues that counsel could assert

---

**2.** Appellant's fleeing or eluding conviction was graded as third-degree felony, *see* 75 Pa.C.S. § 3733(a.2)(2)(i), thus carrying a statutory maximum term of seven years' incarceration, *see* 18 Pa.C.S. § 1103(3). Our review of the record shows that, prior to the imposition of the current sentence, Appellant had served a total of 9 months' incarceration for this offense. Accordingly, the court's imposition of 2 to 4 years' incarceration does not exceed the statutory maximum.

on Appellant's behalf. Accordingly, we affirm Appellant's judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

President Judge Emeritus Stevens joins this opinion.

President Judge Gantman files a concurring opinion.

## CONCURRING OPINION BY GANTMAN, P.J.:

After careful review of the relevant law, I respectfully concur in the result reached in the majority disposition, *i.e.*, to affirm the judgment of sentence. I write separately to emphasize that the degree of the appellate court's independent review of the certified record in *Anders* cases remains in dispute and subject to disagreement for lack of definition. In my opinion, the procedure outlined in *Commonwealth v. Flowers*, 113 A.3d 1246 (Pa.Super. 2015) was not essential to its holding and therefore fails to control appellate review in *Anders* cases.

The majority cites *Flowers* for the general proposition that the appellate court's duty in *Anders* cases is to ensure counsel has met all the obligations owed to the defendant, before counsel can withdraw representation, and to conduct an independent review of the record for any non-frivolous issues, which counsel might have overlooked. The *Flowers* reference in the majority disposition should not, I think, be considered to indicate a wholesale adoption of the procedure outlined in *Flowers* for this Court's independent review, which continues to lend itself to various interpretations.

To illustrate, the general *Anders* procedure for withdrawal of counsel consists of two parts—the first part concerns the role of counsel and the second part concerns the role of the reviewing court. Prevailing law makes counsel's duties clear, but the *Flowers* majority's description of the detail and extent of the reviewing court's independent review exceeds what *Anders* and its Pennsylvania progeny have required. *Flowers* encouraged the reviewing court's comprehensive, in-depth search of the record for **any** potentially non-frivolous issues overlooked by counsel. In *Flowers*, however, parts of the record (transcripts) were missing. As a result, the *Flowers* majority determined counsel did not fulfill **his** duty to search the record for any non-frivolous issues, where Pennsylvania law makes clear neither counsel nor this Court can satisfy *Anders* if counsel fails to supply this Court with a complete record. So, the Court pivoted from "the independent review" analysis it described and remanded the case with instructions for counsel to obtain the missing notes of testimony and for a new *Anders* brief or an advocate's brief. In so doing, the *Flowers* majority resolved the appeal without performing the in-depth, independent examination of the record it had outlined and promoted. Consequently, the *Flowers* majority's commentary regarding the required extent of this Court's review in the *Anders* context is not binding precedent and fails to represent the governing majority view on the duty to perform an "independent review" of the record in these cases.

Given the history of *Anders* law, Pennsylvania case law is naturally mixed on the extent/depth of the reviewing Court's responsibility to search the certified record for non-frivolous issues, which counsel and the appellant might have overlooked. In *Commonwealth v. Santiago*, 602 Pa. 159, 978 A.2d 349 (2009), the Court specifically declined to address the role of the reviewing court in that *Anders* context because Santiago's appeal concerned counsel's obli-

gations only. Nevertheless, the Court offered the following comparison between Pennsylvania's and the Seventh Circuit's approaches:

> [I]n Pennsylvania, when counsel meets his or her obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." [*Commonwealth v. McClendon*, 495 Pa. 467, 471, 434 A.2d 1185, 1187 (1981)]. *Compare with* [*United States v.*] *Youla*, 241 F.3d [296,] 300-01 [(3d Cir. 2001)] (citing *United States v. Wagner*, 103 F.3d 551, 552-53 (7th Cir. 1996) (explaining that where counsel's brief appears adequate on its face, court confines its scrutiny on question of frivolity to those issues and portions of record identified by brief and, if filed, appellant's *pro se* brief)).

*Santiago, supra* at 168 n.5, 978 A.2d at 355 n.5.

In many cases, our Court has described its role as one of searching the record for issues of arguable merit outside the *Anders* brief (and Appellant's brief if one is filed). *See, e.g., Commonwealth v. Goodwin*, 928 A.2d 287, 292 (Pa.Super. 2007) (*en banc*) (stating: "Additionally, we have conducted the independent review of the entire record as required by *Anders* and have not discerned any other potentially non-frivolous issues"); *Commonwealth v. Harden*, 103 A.3d 107, 111 (Pa.Super. 2014) (reviewing record for additional potentially meritorious issues and finding one issue worthy of discussion but ultimately frivolous, regarding whether defendant received notice of license suspension as required to sustain conviction for driving while under suspension); *Commonwealth v. Palm*, 903 A.2d 1244, 1247 (Pa.Super. 2006) (stating: "In addition to examining the sole issue presented by appellate coun-

sel in her *Anders* brief, we have conducted an independent review of the entire record and we cannot discern any other potentially non-frivolous issues"); *Commonwealth v. Vilsaint*, 893 A.2d 753, 755 (Pa.Super. 2006) (stating: "Part and parcel of *Anders* is our Court's duty to review the record to insure no issues of arguable merit have been missed or misstated"); *In re S.M.B.*, 856 A.2d 1235, 1238 (Pa.Super. 2004) (stating: "The *Anders* brief filed by counsel raises three issues, all of which advance the same argument: that the inferences and conclusions of the trial court are not supported by the record and law and cannot provide a basis for terminating parental rights. After a thorough and independent review of the entire record, we do not discern any additional issues for appeal"); *Commonwealth v. Ferguson*, 761 A.2d 613, 616 (Pa.Super. 2000) (stating: "The *Anders* brief filed by counsel raises three issues of arguable merit. Our independent review of the record does not disclose any additional issues of arguable merit for appeal").

In other *Anders* appeals, however, this Court has limited its independent review of the record to confirm the frivolousness of only those issues which counsel and/or the appellant raised. *See, e.g., Commonwealth v. Washington*, 63 A.3d 797, 800 (Pa.Super. 2013) (stating: "We will now conduct our independent review of the issues raised by counsel and determine, using our own judgment, whether the appeal is wholly frivolous"); *Commonwealth v. Martuscelli*, 54 A.3d 940, 947 (Pa.Super. 2012) (stating: "We, therefore, turn to the issue presented in counsel's *Anders* brief to make an independent judgment as to whether the appeal is, in fact, wholly frivolous"); *Commonwealth v. Garang*, 9 A.3d 237, 240-41 (Pa.Super. 2010) (stating: "As counsel has complied with all of the requirements set forth above, we now proceed to an independent review of the rec-

ord and the issues counsel stated arguably support an appeal"); *Commonwealth v. Wimbush*, 951 A.2d 379 (Pa.Super. 2008) (addressing issues in *Anders* brief and making no reference to review of record for other issues of arguable merit); *Commonwealth v. Nischan,* 928 A.2d 349, 354 (Pa.Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007) (stating: "[W]e must now conduct our own review of the issues set forth in counsel's brief to determine if they are frivolous and to decide whether counsel should be permitted to withdraw. Also, because Appellant has exercised his right to file a *pro se* brief, we review it as well"); *Commonwealth v. Wright*, 846 A.2d 730, 736 (Pa.Super. 2004) (determining accuracy of counsel's averment that appeal was wholly frivolous by addressing issues in *Anders* brief with no indication that Court searched record for other non-frivolous issues); *Commonwealth v. Baney*, 860 A.2d 127, 130 (Pa.Super. 2004), *appeal denied*, 583 Pa. 678, 877 A.2d 459 (2005) (stating: "[W]e will address the issues contained in both briefs in fulfillment of our duty to conduct an independent and thorough examination of the record on appeal and our obligation to allow the defendant to raise his own issues *pro se*. ... We have reviewed the issues contained in the *Anders* brief, and, after an independent and thorough review of the record, find all issues wholly frivolous. We then reviewed the arguments presented in defendant's *pro se* brief and find them to be without merit. Therefore, we permit counsel to withdraw and affirm").

In some cases where the *Anders* brief raised issues regarding the discretionary aspects of the appellant's sentence, the reviewing court explored the record for additional issues but limited the scope of its search to other potential sentencing claims. *See, e.g., Commonwealth v. Bishop*, 831 A.2d 656, 661 (Pa.Super. 2003) (stating: "Bishop has not presented a substantial question for our review. In accordance with *Anders*, our independent examination of the record convinces us that there are no other sentencing claims, not advanced by counsel, that would raise a substantial question to permit review of Bishop's sentence"); *Commonwealth v. Titus*, 816 A.2d 251, 256 (Pa.Super. 2003) (stating: "Appellant's claim does not present a substantial question for our review. Moreover, our independent examination of the record has convinced us that there are no other sentencing claims, [which] would raise a substantial question to permit review of Appellant's sentence").

Other jurisdictions have a variety of approaches regarding the reviewing court's role in the *Anders* process. Our Supreme Court noted in *Santiago, supra*, the limited approach of the Seventh Circuit Court of Appeals is that the appellate court should confine its review to the issues discussed in the *Anders* brief as long as the *Anders* brief is adequate on its face and discusses issues that type of case might be expected to involve, citing *Wagner, supra*. The *Wagner* Court justified its more limited approach in the following manner:

> The opposite extreme would be for us to comb the record even where the *Anders* brief appeared to be perfectly adequate, searching for possible nonfrivolous issues that both the lawyer and his client may have overlooked and, if we find them, appointing a new lawyer and flagging the issues we've found for him. We have done this on occasion, **but have now concluded that it is not a sound practice**. It makes this court the defendant's lawyer to identify the issues that he should be appealing on and to hire another member of the bar to argue the issues that we have identified. The defendant ends up in effect with not one appellate counsel but (if he is lucky)

six—his original lawyer, who filed the *Anders* brief; our law clerk or staff attorney who scours the record for issues that the lawyer may have overlooked; a panel of this court that on the advice of the law clerk or staff attorney denies the *Anders* motion and appoints another lawyer for the appellant; the new lawyer. This is overkill, this six-lawyer representation of criminal defendants that we have described and today renounce; it gives the indigent defendant more than he could expect had counsel (whether retained or appointed) decided to press the appeal, since counsel's decision on which issues to raise on appeal would normally be conclusive. *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). If after reviewing all the potential issues counsel decided to brief and argue only one, we would not scour the record looking for the other issues-all the other issues would be deemed waived. The *Anders* procedure implements the Sixth Amendment right of counsel..., a right to have counsel of minimum professional competence—not to have a committee of counsel including judges of the court of appeals.

*Id.* at 552 (emphasis added) (some internal citations omitted). *See also Wilson v. State*, 40 S.W.3d 192 (Tex.App. 2001) (holding reviewing court is not obligated to scour record for any possible error in *Anders* appeals; court has supervisory role to ensure that indigent appellant has benefit of counsel on appeal; court is not required to act as appellant's advocate). *But see A.L.L. v. People*, 226 P.3d 1054, 1063 (Colo. 2010) (stating: "To properly consider an appointed appellate attorney's motion to withdraw, an appellate court must both thoroughly review the record in order to ensure counsel has not missed any appealable issues and consider—at least to some extent—the merits of any issues the court

identifies in the record or that the attorney has identified in her briefs").

At least one state has taken a middle road to the process of the reviewing court's duty to make an independent review of the record: in *State v. Causey*, 503 So.2d 321 (Fla. 1987); the Florida Supreme Court held that *Anders* does not require the appellate court to conduct a "fine tooth comb" level of review beyond the issues identified in the *Anders* brief. Under Florida's approach, the court must examine the record independently to the extent necessary to discover any additional arguably meritorious issues apparent on the face of record. *See id.*

The Pennsylvania Supreme Court has yet to give detailed instructions on how extensive the reviewing Court's "independent examination of the proceedings" in *Anders* appeals should be. The brief footnote in *Santiago* seems to suggest the reviewing Court's examination of the record should extend beyond those issues identified by counsel or the appellant, but the Court provided no further clarification. *See Santiago, supra* at 168 n.5, 978 A.2d at 355 n.5. *Flowers* is the only case that tries to address the issue but the case commentary regarding the necessary extent of this Court's exhaustive issue-searching in the *Anders* context was neither essential to its holding nor precedential for future cases. Thus, we have no governing majority view on this particular topic.

The *Flowers* majority's description of this Court's "independent review" exceeds what *Anders* and its Pennsylvania progeny require and raises significant concerns with respect to its feasibility and fairness to all defendants generally. For example, the *Flowers* approach invites the reviewing Court to raise issues that trial counsel failed to preserve and appellate counsel could not then pursue on appeal because

those issues had been waived for appeal and must wait to be raised under the rubric of ineffectiveness of counsel, which typically cannot be done until a PCRA proceeding. Likewise, as the *Flowers* dissent observed, in appeals where counsel files an advocate's brief, this Court does not comb the record to uncover any non-frivolous arguments counsel failed to raise. Instead, counsel's decision on which issues to pursue on appeal is typically treated as conclusive. *See Jones, supra.* Thus, strict application of the majority's view in *Flowers* would unfairly benefit defendants in *Anders* appeals to the detriment of defendants whose counsel file an advocate's briefs. Nevertheless, the "purpose of *Anders* is to provide equal, not extra, representation to indigent defendants, regardless of their counsel's assessment of the merits of their appeals." *Flowers, supra* at 1252 (Strassburger, J., dissenting). In light of *Anders*' overall purpose, it is no mystery why almost all Pennsylvania case law interpreting *Anders* relates to counsel's role in the process. *Anders* sought to ensure that counsel meets all obligations to the defendant before withdrawing representation. This Court's review function is to ensure that counsel fulfills that role, not to act as counsel's second chair. At the same time, this Court should not simply confine its review of the record in *Anders* appeals solely to the issues counsel and/or the appellant raises.

Therefore, I recommend a reasonable middle ground: No doubt, the reviewing Court must confirm counsel has complied with all the technical and substantive requirements of *Anders*. Among those requirements, counsel must provide a complete record, as counsel's failure to do so would indicate counsel did not search the entire record for any potentially non-frivolous issues. Next, this Court must review the entire record as it must do in **every case**, but especially with respect to the issues raised in the *Anders* brief (and any supplemental brief). The Court should also look for **other issues that appear on the face of the record which this Court can raise** *sua sponte, e.g.*, legality of sentence, jurisdiction of the trial court or the reviewing Court, and whether counsel or the appellant have misrepresented the law or the facts of the case when presenting the appellate issues. At that point, in my opinion, the Court has fulfilled its duty in the *Anders* context. If the reviewing Court determines any of these issues are actually non-frivolous, the Court must deny counsel's petition to withdraw and remand with directions for an advocate's brief. Absent obvious flaws, the Court can conclude that the appeal **as presented** is wholly frivolous, grant counsel's petition to withdraw, and affirm the judgment. Based on the foregoing, I do not think *Flowers* controls appellate review in *Anders* cases. To the extent the majority opinion lends authority or support to *Flowers* in this regard, I must limit my agreement and concur only in the result of the majority opinion.